**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

MHW, LTD.,

Plaintiff,

v.

MICHAEL E. KLAUER, *et al.*,

Defendants.

No. 25cv19095 (EP) (LDW)

**MEMORANDUM ORDER**

**PADIN, District Judge.**

Plaintiff MHW, Ltd. ("MHW") moves for default judgment against Michael E. Klauer, Team Klauer Co. ("Team Klauer"), and MMK Logistics LLC ("MMK") (collectively, the "Subject Defendants") pursuant to Federal Rule of Civil Procedure 55(b). D.Es. 38, 40, and 42 (the "Motions" or "Mots."). The Clerk entered default against these Defendants, but Plaintiff has not established that the Court has personal jurisdiction over any of them. Accordingly, the Court will **DENY** the Motions ***without prejudice***.[1]

## I. BACKGROUND

### A. Factual Background

Plaintiff is a New York corporation with its principal place of business in Manhasset, New York, but is registered to do business in New Jersey and maintains an account with a New Jersey warehouse operator that provides storage and order-fulfillment services. D.E. 1 ("Complaint" or "Compl.") ¶ 8. Plaintiff alleges that it entered into an oral agreement with Klauer, who was acting as president of Blue Sky Distributing, Inc. d/b/a Momentum Beverage Team Colorado d/b/a

[1] The Court decides the Motions without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b).

Colorado Beverage Team d/b/a Blue Sky Distributing ("Momentum Colorado"); UVA Distributors, LLC d/b/a Momentum Beverage Team d/b/a Momentum Beverage Team Illinois ("Momentum Illinois"); and Momentum Beverage Team Wisconsin, LLC ("Momentum Wisconsin") (collectively, the "Momentum Defendants") to supply alcoholic beverages to those entities. *Id.* ¶¶ 15–16. Under the parties' course of dealing, the Momentum Defendants submitted purchase orders, Plaintiff supplied the requested goods, and Plaintiff issued invoices for payment. *Id.* ¶¶ 17, 19–22. Plaintiff alleges that most of the goods were stored and fulfilled from warehouses located in New Jersey. *Id.* ¶ 18.

Invoices attached to the Complaint for Momentum Illinois, Momentum Wisconsin, and Momentum Colorado identify goods originating from a third-party warehouse located at 2220 91st Street, North Bergen, New Jersey. Compl. Ex. 1 ("Illinois Invoices") at 21, 35, 47; Compl. Ex. 2 ("Wisconsin Invoices") at 6, 11; Compl. Ex. 3 ("Colorado Invoices") at 3, 26. The Complaint alleges that the three Momentum Defendants retained the goods, accepted the benefits of Plaintiff's performance, and failed to pay outstanding invoices totaling $513,679.32. Compl. ¶¶ 21–23.

*1. Michael E. Klauer*

Klauer is an Illinois resident who allegedly serves as president of all three Momentum Defendants and as president, secretary, and director of Team Klauer, as well as president of MMK. Compl. ¶¶ 9–14. In addition to negotiating the original supply arrangement, Klauer allegedly negotiated payment plans on behalf of the Momentum Defendants in February and June of 2025, after they failed to satisfy their payment obligations. *Id.* ¶¶ 53–60. In a February 26, 2025 email to MHW's collections manager, attached to the Complaint as Exhibit 4, Klauer summarized proposed installment payments for Momentum Illinois and Momentum Colorado, including weekly payments for outstanding balances. Compl. Ex. 4 at 6–7. MHW's chief executive officer

subsequently corresponded with Klauer about revisions to the proposed payment schedule and continuing payments for the three Momentum Defendants. *Id.* at 2. The subsequent correspondence also reflects telephone discussions and follow-up emails between Klauer and MHW personnel concerning unpaid invoices and payment arrangements. Compl. Ex. 5 ("Second Payment Plan") at 2–9. Plaintiff alleges that Klauer knowingly misrepresented the Momentum Defendants' ability and intent to satisfy their obligations and exercised complete control over the affiliated corporate Defendants. Compl. ¶¶ 63–80, 109–118.

*2. Team Klauer Co.*

Team Klauer is an Illinois corporation with its principal place of business in Barrington, Illinois. *Id.* ¶ 9. Klauer is its president, secretary, and director. *Id.* According to the Complaint, Team Klauer is the sole member and manager of MMK and Momentum Illinois. *Id.* ¶¶ 10–11. Plaintiff alleges, upon information and belief, that Klauer exercised complete control over Team Klauer and the other corporate Defendants, including their financial, contractual, and operational affairs, and used them as undercapitalized alter egos for his personal benefit. *Id.* ¶¶ 70–79. Plaintiff further alleges that Team Klauer participated with Klauer and MMK in a scheme to obtain goods through the Momentum Defendants without intending to pay for them and knowingly assisted Klauer's alleged fraud. *Id.* ¶¶ 115–121. Team Klauer's alleged connection to the New Jersey transactions thus arises principally from its ownership and control relationships with the entities involved in purchasing goods fulfilled from New Jersey, rather than from any separately identified transaction undertaken by Team Klauer. *Id.* ¶¶ 10–11, 15–19, 70–80, 115–121.

*3. MMK Logistics LLC*

MMK is an Illinois limited liability company with its principal place of business in East Dundee, Illinois, allegedly owned and managed by Team Klauer and headed by Klauer. Compl.

¶ 10. Invoices attached to the Complaint identify MMK as a delivery recipient for certain Momentum Illinois orders and provide MMK-related email addresses for coordinating deliveries on Illinois and Colorado orders. Illinois Invoices at 2, 4, 10, 12, 47; Colorado Invoices at 3, 26.

Plaintiff also alleges that MMK participated with Klauer and Team Klauer in the fraudulent scheme involving the Momentum Defendants and substantially assisted Klauer's alleged misconduct. Compl. ¶¶ 115–121.

**B. Procedural Background**

After Defendants failed to plead or otherwise defend this action, the Court directed Plaintiff to request entries of default pursuant to Rule 55(a). D.E. 18. On April 30, 2026, Plaintiff requested entries of default against all Defendants, which the Clerk entered on May 1, 2026. D.Es. 26–31; May 1, 2026 Clerk's Entry of Default.

On May 28, 2026, Plaintiff filed the present Motions for default judgment against the Subject Defendants pursuant to Federal Rule of Civil Procedure 55(b)(2). *See* Mots. Plaintiff separately requested the Clerk's entry of default judgments against the remaining Defendants—Momentum Colorado, Momentum Illinois, and Momentum Wisconsin—pursuant to Rule 55(b)(1), which permits the Clerk to enter default judgment when the amount sought is certain or can be determined by computation. D.Es. 44–46. On May 29, 2026, the Clerk advised Plaintiff that those requests could not be addressed because they did not include proposed orders. May 29, 2026 Clerk's Quality Control Message. Plaintiff later filed proposed judgments and a corrected request as to Momentum Wisconsin. D.Es. 47–50. On November 5, 2026, the Clerk entered default judgments in favor of Plaintiff against Momentum Colorado in the amount of $231,414.27, Momentum Illinois in the amount of $240,679.62, and Momentum Wisconsin in the amount of $41,585.43. D.Es. 57–59.

## II. LEGAL STANDARDS

A court may enter default judgment against a properly served party who has failed to plead or otherwise defend an action. *See* Fed. R. Civ. P. 55(b)(2). Although the judiciary's "preference [is] that cases be disposed of on the merits whenever practicable," the "entry of a default judgment is left primarily to the discretion of the district court." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180–81 (3d Cir. 1984) (citation omitted). The court accepts the well-pleaded factual allegations in the complaint not related to damages and must decide if the "unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Maersk Line v. TJM Int'l Ltd. Liab. Co.*, 427 F. Supp. 3d 528, 533 (D.N.J. 2019) (citation omitted). If Plaintiffs' "exhibits contradict [their] allegations in the complaint, the exhibits control." *Vorchheimer v. Phila. Owners Ass'n*, 903 F.3d 100, 112 (3d Cir. 2018).

Before granting default judgment, the court must determine whether (1) it has subject matter jurisdiction over the claims at issue and personal jurisdiction over the defendants, (2) the defendants were properly served, (3) the complaint states a sufficient cause of action, and (4) the plaintiff has proven damages. *Days Inns Worldwide, Inc. v. HH Pramukh, LLC*, No. 15-4318, 2016 WL 7231598, at *1 (D.N.J. Dec. 14, 2016) (citations omitted).

After making those determinations, the court must consider the *Chamberlain* factors: "(1) prejudice to the plaintiff[s] if default is denied, (2) whether the defendant[s] appear[] to have a litigable defense, and (3) whether defendant[s'] delay is due to culpable conduct." *Trs. of Int'l Union of Painters & Allied Trades Dist. Council 711 Health & Welfare Fund, Vacation Fund, & Painters Dist. Council 711 Finishing Trades Inst. v. Leo Constructing, LLC*, 718 F. Supp. 3d 436, 441 (D.N.J. 2024) (quoting *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000)).

A plaintiff must still prove damages to obtain default judgment. *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990). A "damages determination may be made without a hearing

as long as the court ensures that there is a basis for the damages specified in the default judgment." *Days Inns Worldwide, Inc. v. Panchal*, No. 15-1459, 2015 WL 5055318, at *2 (D.N.J. Aug. 25, 2015) (citation modified). And a default judgment "must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

## III. DISCUSSION

As explained above, before considering whether default judgment is warranted, the Court must determine whether it has personal jurisdiction over each Subject Defendant. The Court will address whether Plaintiff has established general and specific jurisdiction as to the Subject Defendants in turn. For the reasons set forth below, the Court finds that Plaintiff has not established that any Subject Defendant is subject to either general or specific jurisdiction in New Jersey. Accordingly, the Court will **DENY *without prejudice*** the Motions.

### A. General Jurisdiction

"A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citations omitted). "With respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (citations omitted). Though the Supreme Court has declined to "foreclose the possibility that, in an exceptional case . . . a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State," that is the exception rather than the rule. *Id.* at 139 n.19.

Though the Complaint asserts that this Court has general jurisdiction over Defendants because of their "continuous and systematic contacts with New Jersey," Compl. ¶ 6, Plaintiff has

not shown that any of the Subject Defendants are at home in New Jersey. The Complaint alleges that Team Klauer is incorporated in Illinois, and MMK is organized under Illinois law. *Id.* ¶¶ 9–10. Both maintain their principal places of business in Illinois. *Id.* Plaintiff alleges that Klauer is an Illinois citizen and identifies an Illinois address. Compl. ¶¶ 12, 14. And it alleges no exceptional New Jersey operations that would support general jurisdiction over the entities. *See Daimler*, 571 U.S. at 139 n.19. Accordingly, the Court does not have general jurisdiction over the Subject Defendants.

**B. Specific Jurisdiction**

When a defendant is not subject to general jurisdiction in a state, the Due Process Clause of the Fourteenth Amendment requires that the nonresident have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (citations omitted). A defendant's connection with the forum state "must arise out of contacts that the defendant *himself* creates with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (citations omitted) (emphasis in original). In addition, a "plaintiff cannot be the only link between the defendant and the forum." *Id.* at 285. Instead, a defendant must "purposefully avail[] itself of the privilege of conducting activities within the forum State." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985). The Third Circuit has held that "[a] contract alone does not automatically establish sufficient minimum contacts in the other party's home forum," and when "determining whether specific jurisdiction exists, [the court] consider[s] not only the contract but also prior negotiations and contemplated future consequences." *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*, 75 F.3d 147, 151 (3d Cir. 1996) (citations omitted). A court in the Western District of Pennsylvania found no personal jurisdiction under similar circumstances. In that case, an out-of-state distributor's

shipment of products to a Pennsylvania warehouse, at its customer's sole direction, was insufficient to establish specific personal jurisdiction. *M.S. v. Western Power Sports, Inc.*, 512 F. Supp. 3d 604, 609–10 (W.D. Pa. 2021). The court reasoned that the defendant's "sole contact" with the forum state "appear[ed] to be shipping products," which was insufficient to establish minimum contacts with the forum state. *Id.*

Here, Defendants' contacts with New Jersey are even more attenuated because, unlike the distributor in *M.S.*, Defendants are not alleged to have shipped any goods into the forum. Rather, Defendants' only alleged connection to New Jersey is Plaintiff's *own* use of New Jersey warehouses to store and fulfill orders. Compl. ¶¶ 8, 17–18. Plaintiff alleges that all Defendants in this case, including the Subject Defendants, engaged in business transactions and a "fraudulent scheme expressly directed at New Jersey, which involved New Jersey businesses and caused harm in the State." Compl. ¶¶ 5–6. Although Plaintiff alleges that most goods were stored and fulfilled from New Jersey warehouses, Plaintiff identifies no specific transactions or other activities by the Subject Defendants demonstrating that they purposefully conducted business in New Jersey. *Id.* ¶¶ 15–23. Moreover, Plaintiff is incorporated and maintains its principal place of business in New York, notwithstanding its New Jersey warehousing operations. *Id.* ¶ 8. These allegations do not establish purposeful contacts between the Subject Defendants and New Jersey. *See Vetrotex*, 75 F.3d at 151–53.

The allegations concerning each Subject Defendant confirm this deficiency. *First*, Klauer allegedly negotiated the supply agreement and subsequent payment plans in his capacity as president of the Momentum Defendants. Compl. ¶¶ 15, 54–60. Although Plaintiff alleges that Klauer negotiated agreements involving goods largely fulfilled from a New Jersey warehouse and generally asserts that Defendants directed business and fraudulent conduct toward the State, it does

not identify specific facts showing how Klauer's *own* negotiations or representations were purposefully directed toward New Jersey. Compl. ¶¶ 5–6, 15–18, 53–69.

Plaintiff attempts to argue that the corporate Defendants were Klauer's alter egos. The Court is not persuaded that this creates personal jurisdiction. Plaintiff alleges upon information and belief that Klauer "exercised complete dominion and control over the business operations and decision-making" of all other Defendants, which operated as his alter egos through undercapitalization, commingling of funds, and disregard of corporate formalities. Compl. ¶¶ 70–80. Even assuming these allegations could support attributing the corporate entities' conduct to Klauer or another Subject Defendant, Plaintiff has not identified purposeful contacts with New Jersey arising from that conduct. Thus, the alleged alter ego relationship does not establish the minimum contacts necessary to exercise personal jurisdiction over the Subject Defendants. *See D'Jamoos*, 566 F.3d at 102–03.

*Second*, Team Klauer allegedly owns or manages MMK and Momentum Illinois and participated in Klauer's fraudulent scheme. Compl. ¶¶ 9–11, 115–121. Yet Plaintiff identifies no independent New Jersey contacts by Team Klauer or facts sufficient to attribute another entity's forum contacts to it. *See Allaham v. Naddaf*, 635 F. App'x 32, 41–42 (3d Cir. 2015).

*Third*, MMK allegedly participated in the underlying transactions by receiving or coordinating shipments, but the invoices identify its receiving warehouse in Illinois, not New Jersey. Illinois Invoices at 2, 4, 10. Plaintiff does not allege that MMK itself directed any activity toward New Jersey. *See* Compl.

Nor do Plaintiff's fraud allegations establish specific jurisdiction. For an intentional tort such as fraud, jurisdiction may arise where the defendant expressly aimed its conduct at the forum state and the plaintiff suffered the brunt of the resulting harm there. *See IMO Indus., Inc. v. Kiekert*

*AG*, 155 F.3d 254, 265–66 (3d Cir. 1998). Although Plaintiff generally alleges that the Subject Defendants participated in a fraudulent scheme, it identifies no fraudulent communications or other conduct specifically directed toward New Jersey. Compl. ¶¶ 63–80, 109–121. Accordingly, Plaintiff has not established that any Subject Defendant expressly targeted New Jersey through the alleged fraud. *See IMO Indus.*, 155 F.3d at 265–66.

As Plaintiff has not demonstrated that any Subject Defendant purposefully established minimum contacts with New Jersey, the Court lacks specific personal jurisdiction over the Subject Defendants. As a result, the Court lacks a basis to enter default judgment against these Defendants. *See Mark IV Transportation & Logistics v. Lightning Logistics, Inc.*, 705 F. App'x 103, 108 (3d Cir. 2017). The Court therefore does not reach the remaining prerequisites for default judgment, including service, liability, damages, or the discretionary default judgment factors.

The Court lacks personal jurisdiction over the Momentum Defendants for the same reasons. Although Plaintiff alleges that these entities placed orders for goods stored and fulfilled from New Jersey warehouses, it identifies no specific conduct by any Momentum Defendant purposefully directed toward New Jersey. Compl. ¶¶ 15–23. As with the Subject Defendants, the alleged connection to New Jersey arises principally from Plaintiff's own warehousing arrangements, which are insufficient to establish minimum contacts. *See Walden*, 571 U.S. at 284–85; *M.S.*, 512 F. Supp. 3d at 609–10. Because the Clerk's default judgments against the Momentum Defendants do not resolve the claims against all Defendants, they remain subject to revision under Rule 54(b), which provides that "any order or other decision . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." The Court will

therefore **VACATE** those default judgments since the Court lacks personal jurisdiction over the Momentum Defendants.

Although a court lacking personal jurisdiction must consider whether transfer is appropriate, the Court declines to transfer this action at this time because Plaintiff will have an opportunity to amend its Complaint to address the jurisdictional deficiencies identified herein. *See Coulter v. Nat'l Tenant Network*, No. 24-6798, 2026 WL 836465, at *9–10 (D.N.J. Mar. 25, 2026) (denying default judgment without prejudice for lack of personal jurisdiction and deferring transfer to allow the plaintiff an opportunity to address the jurisdictional deficiency).

If Plaintiff fails to amend its Complaint, the Court will transfer this action to the Northern District of Illinois. *See* 28 U.S.C. § 1631 (When a "court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court . . . in which the action or appeal could have been brought at the time it was filed or noticed."); *see also Island Insteel Sys., Inc. v. Waters*, 296 F.3d 200, 218 n.9 (3d Cir. 2002).

## IV. CONCLUSION AND ORDER

Accordingly,

**IT IS**, on this **18th** day of November, 2026,

**ORDERED** that the Motions for default judgment against Klauer, Team Klauer, and MMK, D.Es. 38, 40, and 42, are **DENIED *without prejudice***; and it is further

**ORDERED** that the Clerk's default judgments entered against Momentum Colorado, Momentum Illinois, and Momentum Wisconsin pursuant to Federal Rule of Civil Procedure 55(b)(1), D.Es. 57–59, are **VACATED** for lack of personal jurisdiction; and it is further

**ORDERED** that Plaintiff may, within **30 days** of this Order, file an amended complaint setting forth specific factual allegations establishing a basis for the Court's exercise of personal

jurisdiction over each of the Defendants, consistent with the deficiencies identified in this Memorandum Order; and it is finally

**ORDERED** that, if Plaintiff fails to file an amended complaint within 30 days of this Order, this action shall be **TRANSFERRED** to the United States District Court for the Northern District of Illinois.



Evelyn Padin, U.S.D.J.